UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

KEVIN THURMOND,

          Petitioner,

          -v-

SUPERINTENDENT POOLE, Five Points
Correctional Facility,

          Respondent.
-----------------------------------------------------------x

**REPORT AND RECOMMENDATION**
03-CV-233 (NG) (LB)

BLOOM, United States Magistrate Judge.

      The Honorable Nina Gershon, United States District Judge, referred this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254 to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636 (b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

1. Factual History

      On October 5, 1999, petitioner cornered Mary Ann Ciuro ("Ciuro") on the landing of a staircase that led up to an elevated subway platform in Brooklyn, New York. (T at 237-38, 252-53).[1] Ciuro testified that petitioner touched her breast, licked her neck, unzipped his pants and used her hand to rub his penis.[2] (T at 240-41). Ciuro also testified that petitioner ordered her to remove her

---

    [1] T ___ refers to the pages of the trial transcript.

    [2] The trial court conducted a hearing to determine whether Ms. Ciuro, a mildly retarded person, was competent to testify. (T at 201-10). The trial court concluded that Ms. Ciuro was competent to testify. Id.

1



underclothes and to lie on the ground. Ciuro further testified that petitioner punched her in the head which caused her to lose consciousness. (T at 241-44).

At the time of the attack, Angel Rivera ("Rivera") was walking toward the exit of the subway station and saw a woman lying face down on the stairs of the platform opposite to him. (T at 10-11). Rivera testified that he observed petitioner, standing approximately three feet away from Ciuro, removing the belt from his pants and lowering his zipper. (T at 15, 38, 40, 53). Petitioner noticed Rivera and ran up the subway stairs. (T at 16-17). Rivera ran to the token booth and told the attendant that there was a nude woman lying in the stairwell. (T at 42). Rivera ran after petitioner, but was not able to catch him. (T at 16-19, 42-43). Rivera returned to Ciuro and a few minutes later, Rivera saw petitioner walking down the stairs. Petitioner stopped and asked Rivera what had happened. Rivera replied that petitioner knew what had happened because he was the one responsible. (T at 22-24).

Meanwhile, Joseph Fontana ("Fontana") had entered the subway station. Fontana saw two people who he later learned to be Rivera and Ciuro on the stairs leading toward the Manhattan bound trains. (T at 155). Rivera was standing over Ciuro, who was lying on the floor. Fontana purchased subway tokens and went through the turnstile, and at that time saw another man who he later identified as petitioner, quickly walk past him. (T at 155-56, 167-69). Rivera asked Fontana if he noticed petitioner, and then told Fontana that petitioner had raped Ciuro. (T at 156, 169). Fontana chased petitioner, and followed him outside of the subway station.

As Fontana chased petitioner outside the subway station, he noticed a group of firefighters outside a funeral home. Fontana pointed out petitioner and told the firefighters that petitioner had just raped a girl. The firefighters gave chase, caught petitioner and brought him to a nearby firehouse to wait for the police. (T at 93-94, 113-14, 158-59, 172-73).

2

Meanwhile police officers interviewed Ciuro at the subway station. Eventually petitioner was brought to the subway station where Ciuro identified him as her assailant. (T at 246, 257, 268-69). Ciuro was taken to the hospital, where she was treated for her injuries. A gynecological examination of Ciuro revealed no evidence of semen and no injury to Ciuro's genital and upper thigh area. (T at 78-81, 88). At the close of the People's case, the parties stipulated that the rape kit and petitioner's clothing revealed no evidence of semen. (T at 305-06).

2. Procedural History

A. Charge and Verdict

Petitioner's attorney moved to dismiss the indictment at the close of the People's case. (T at 323). Petitioner's attorney specifically moved to dismiss the attempted rape charge, arguing that there was no credible evidence that petitioner made an "appreciable attempt to commit the acts of rape against" Ciuro. (T at 322).

The court granted the motion in part and dismissed two counts of sexual abuse in the first degree based on the allegation that petitioner forcibly touched his penis to Ciuro's stomach, and forcibly touched Ciuro's buttocks with his hand. The court further dismissed one count of second degree assault, and one count of second degree unlawful imprisonment. (T at 335; Brief for defendant-appellant at 8, annexed as respondent's Exhibit A ("App. Brief")).

The trial court submitted six counts to the jury: two counts of first degree sexual abuse, one count of first degree attempted rape, one count of second degree assault, one count of first degree attempted sexual abuse, and one count of third degree assault. (T at 420-34; App. Brief at 9). Petitioner was convicted of attempted rape in the first degree and assault in the second degree; he was acquitted of the remaining charges. (T at 465-67).

3

### B. § 330 motion and Sentence

Before sentencing, petitioner filed a motion to set aside the verdict pursuant to § 330.30 [1] of the New York Criminal Procedure Law (McKinney 1994) (" § 330 motion") arguing that: (1) the People failed to prove both elements of attempted rape beyond a reasonable doubt; (2) the identification of the petitioner was not reliable; (3) the testimony of the eyewitness, Angel Rivera, was not sufficient to support the conviction; (4) the People failed to prove that the petitioner's intent was to commit a specific crime and to prove that petitioner acted to carry out this specific crime; (5) the jury had to resort to sheer speculation in order to convict petitioner; and (6) the Court should have re-instructed the jury that the burden of proof is solely on the People. (S at 2-6; Affirmation in Opposition to Motion to Vacate, annexed as respondent's Exhibit E at 3, ¶ 6 ).

On September 12, 2000, the trial court denied petitioner's motion to set aside the verdict, finding that the evidence at trial fully supported the jury's decision People v. Thurmond, Ind. No. 8090-99, slip op. at 7 (Sup. Ct. Kings County, September 12, 2000) (annexed as respondent's Exhibit B).

On September 13, 2000, petitioner was sentenced as a persistent violent felony offender to concurrent terms of imprisonment of eighteen to life on the attempted rape conviction, and fifteen years to life on the assault conviction. (S at 15).[3]

### C. § 440 motion

On September 23, 2000, petitioner filed a motion to vacate the conviction pursuant to § 440.10 of the New York Criminal Procedure Law (McKinney 1994) ("440 motion") arguing that: (1) the prosecutor committed fraud by knowingly presenting perjured testimony to both the grand

---

[3] S ___ refers to the pages of the sentencing transcript.

jury and at trial; (2) his defense attorney provided ineffective assistance of counsel; and (3) the People failed to turn over all material required under People v. Rosario, 9 N.Y.2d 286 (1961) ("Rosario") (§ 440 motion, annexed as respondent's Exhibit D).

On April 24, 2001, petitioner's § 440 motion was denied as to first two grounds. People v. Thurmond, Ind. No. 8090-99, slip op. at 1 (Sup. Ct. Kings County, April 24, 2001) (annexed as respondent's Exhibit F). First, the Court held that "there is not a scintilla of evidence that the prosecutor committed fraud in this case or that any witness committed perjury." (citing N.Y. Crim. Proc.§ 440.30 (4)(d)). Id. at 1-2. Second, the Court held that petitioner was not deprived of the effective assistance of counsel (citing N.Y. Crim. Proc.§ 440.10 (2)(b)). Id. at 2. Finally, the Court instructed the prosecution to conduct a search to determine whether any Rosario material existed that had not been turned over to the defense.

On May 21, 2001, after reviewing the prosecution's response, that no undisclosed Rosario material existed, the Court denied the motion to vacate on the Rosario grounds (citing N.Y. Crim. Proc.§ 440.30 (4)(d)). People v. Thurmond, Ind. No. 8090-99, slip op. at 1 (Sup. Ct. Kings County, May 21, 2001) (annexed as respondent's Exhibit G). On November 16, 2001, the Appellate Division Second Department, denied petitioner's leave to appeal the § 440 decision. See Affidavit in Opposition to Writ of Habeas Corpus at 3, ¶ 10.

D. Direct Appeal

Petitioner appealed his conviction to the New York State Appellate Division, Second Department, claiming the evidence adduced at trial was not legally sufficient to support his conviction. (App. Brief at 10). On May 28, 2002, the Appellate Division affirmed petitioner's conviction stating "[v]iewing the evidence adduced at the trial in the light most favorable to the

prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (see People v Fiol, 279 AD2d 477; People v Lyons, 197 AD2d 708)." See People v. Thurmond, 294 A.D.2d 608, 743 N.Y.S. 2d 280 (2d Dept. 2002). The New York Court of Appeals denied petitioner leave to appeal on August 6, 2002. See People v. Thurmond, 98 N.Y.2d 713 (N.Y. 2002).

E. The Instant Petition

Petitioner filed the instant petition which argues: (1) the prosecutor committed perjury in the bill of particulars; (2) the prosecutor allowed a witness to commit perjury at trial; (3) the prosecutor failed to turn over Rosario material; (4) the prosecutor allowed a witness to commit perjury in the grand jury; and (5) the evidence was not legally sufficient to prove petitioner's guilt beyond a reasonable doubt. Respondent opposed the petition and petitioner filed a traverse.

## DISCUSSION

1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas corpus petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1); see Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (holding that the phrase "Federal Law" refers only to "clearly established Supreme Court precedent").

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court held that a decision is "contrary to" Supreme Court precedent: (1) "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," id. at 405; or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent." Id. at 406. Under the "unreasonable application" clause, a federal court may grant the writ if the state court identifies the correct legal principle but unreasonably apples that principle to the facts of the prisoner's case. Id. at 407-08. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Court of Appeals has warned, however, that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3rd Cir. 1999)).

Further, as long as the state court disposes of the federal claim on the merits and reduces its disposition to judgment, the deference demanded of a federal habeas court by § 2254(d)(1) applies "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001); see Ryan v. Miller, 303 F.3d 231, 245-46 (2d Cir. 2002). Applying the proper deferential standard to this case, the instant petition should be denied.

2. Petitioner's grounds

    A. Prosecutor Misconduct

Petitioner asserts that the prosecutor provided false information in the bill of particulars to

mislead the defense; allowed perjured testimony to be presented to the grand jury and at trial; and failed to disclose Rosario material. Petition at 5-6. The trial court denied petitioner's prosecutorial misconduct claim on the merits finding that: [4]

> There is not a scintilla of evidence that the prosecutor committed fraud in this case or that any witness committed perjury. Although there were minor variations among the answers to the bill of particulars, the grand jury testimony and the trial testimony, the discrepancies were trivial. At trial, defense counsel utilized these negligible inconsistencies in his cross-examination of the witnesses, placing the issue squarely before the jury, which had an opportunity to thoroughly evaluate the discrepancies during its deliberations. There is simply no reasonable possibility that the defendant's claims on this issue are true and pursuant to C.P.L. § 440.30 (4) (d), the Court denies this ground of defendant's motion.

People v. Thurmond, Ind. No. 8090-99, slip op. at 1 (Sup. Ct. Kings County, April 24, 2001) (annexed as respondent's Exhibit F).

Reversing a conviction for prosecutorial misconduct is a "drastic remedy that courts are generally reluctant to implement." United States v. Valentine, 820 F.2d 565, 570 (2d Cir. 1987). The Supreme Court has held that prosecutorial misconduct violates due process when it is so prejudicial that the trial is rendered "fundamentally unfair." Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974). There can be no reversal unless petitioner can demonstrate "substantial prejudice" which deprived him of his right to a fair trial. Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1988) (in order to prevail on a prosecutorial misconduct claim the petitioner must show more than mere trial error). A claim of prosecutorial misconduct will lie where the petitioner shows that the prosecution used false evidence or misrepresented the nature of nontestimonial evidence. Miller v. Pate, 386 U.S. 1 (1967).

---

[4] Petitioner did not raise a prosecutorial misconduct claim on direct appeal and thus the Appellate Division did not review petitioner's claim. See Petitioner's Appellate Brief, annexed as respondent's Exhibit A.

Contrary to petitioner's assertion, there is no record evidence that the prosecutor used false testimony in securing his conviction, let alone did so knowingly and intentionally. Moreover, the trial court's adjudication of this claim was not contrary to or an unreasonable application of clearly established Federal law.

1. <u>Grand Jury Claim</u>

Petitioner alleges that the prosecutor knowingly presented Ciuro's perjured testimony to the grand jury. Petitioner points to inconsistencies between Ciuro's grand jury and trial testimony, as well as to her inconsistent statements to the police at the time of the incident. Veronica McCue, principal of the Lowell school, a private special education school Ciuro previously attended, testified that Ciuro is mildly retarded. Specifically, McCue testified that Ciuro has an intelligence quotient ("I.Q.") of 75, and a cognitive language disorder. (T at 221). McCue further testified that Ciuro's cognitive language disorder may result in Ciuro's retelling of events out of chronological order, leaving details out and starting in the middle when describing an occurrence. (T at 221-22). Furthermore Ciuro's condition may be exacerbated by stress. <u>Id</u>. Therefore, although there were minor variations between Ciuro's grand jury and trial testimony, the Court found these discrepancies were insignificant in light of Ciuro's disability.

Moreover, the Supreme Court has made clear that any error that occurred before the grand jury is rendered harmless beyond a reasonable doubt by the petit jury's verdict. <u>United States v. Mechanik</u>, 475 U.S. 66, 70 (1986). Therefore, claims arising from alleged deficiencies in state grand jury proceedings are not cognizable on habeas corpus review. <u>Lopez v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989). Accordingly, petitioner's allegations of prosecutorial misconduct at the grand jury are not cognizable, <u>id.</u> at 32; <u>Barnes v. Giambruno</u>, No. 01 CIV. 8965, 2002 WL 850020 at * 7

(S.D.N.Y. May 2, 2002) (claims of prosecutorial misconduct before the grand jury are not cognizable on habeas review), and this ground should be denied.

### 2. Witness Perjury

Petitioner alleges that the prosecutor used false information and omitted facts from the bill of particulars because different information was adduced at trial. Petitioner further alleges that the testimony of Rivera and Ciuro must have been perjured because the Rosario documents that were turned over did not reflect their grand jury and trial testimony. (§ 440 motion at 15, annexed as respondent's Exhibit D). Specifically, petitioner notes that in the bill of particulars, the People stated that Rivera saw petitioner touching Ciuro's buttocks, whereas at trial, Rivera testified that he saw petitioner "going to touch her." (T at 15-16). Petitioner further notes that in the bill of particulars, the People stated that petitioner pulled down Ciuro's pants, whereas at trial, Ciuro testified that she pulled her pants down. (T at 241-42).

A conviction based on perjured testimony violates the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959). Under this standard, a conviction must be set aside if "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976).

The Second Circuit has thus far declined to "draw the contours of the phrase 'should have known.'" Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003). However absent prosecutorial knowledge of the perjury, the AEDPA's clearly established Federal law standard prohibits habeas relief on such grounds. Id. at 345 n. 2 (after AEDPA, habeas petitioners can no longer rely on Sanders v. Sullivan, 863 F.2d 218 (2d Cir. 1998), in which habeas relief was granted in the absence of prosecutorial knowledge of perjury); Smith v. Herbert, 275 F.Supp.2d 361, 367 (E.D.N.Y. 2003).

10

Furthermore, prosecutorial misconduct consisting of failing to correct false testimony does not rise to the level of a Fourteenth Amendment violation unless there is reasonable likelihood that the testimony affected the outcome of the trial. Giglio v. United States, 405 U.S. 150, 154 (1972).

Here, any variation between the bill of particulars and the testimony adduced at trial was insignificant. Moreover, any inconsistency does not establish that the information in the bill was false. Furthermore, the jury assessed the witnesses' testimony and found it credible. Petitioner fails to demonstrate that the prosecutor had any knowledge of any purported perjury. In addition, the purported perjury cannot be said to have affected the outcome of the trial. Accordingly, petitioner has failed to demonstrate that the state court's determination was an unreasonable application of Federal law. Therefore, petitioner's claim regarding perjury should be denied.

### 3. Rosario claim

Petitioner alleges that the prosecution violated People v. Rosario, 9 N.Y.2d 286 (1961), when the People failed to disclose a statement allegedly made by Rivera to the police. Rosario requires that a prosecutor provide the defense, before or during trial, with any written or recorded statement made by a person whom the prosecutor intends to call as a witness which relates to the subject matter of the witness's testimony. See N.Y. Crim. Proc. Law § 240.45(1) (McKinney 1984). Any trial error under Rosario, however, raises only a state law rather than a constitutional claim. Bellezza v. Fischer, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *23 (E.D.N.Y. Aug. 06, 2003); see also Clark v. Greiner, 97-CV-2438, 2001 WL 135732, at *5 (E.D.N.Y. Feb. 2, 2001). Federal habeas review is not available to correct errors of state law, but is limited to deciding whether a conviction is in violation of "the Constitution or laws or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, petitioner's allegation that he was deprived of

material which he alleges should have been disclosed under Rosario is dismissed for failure to state a federal claim.[5] Houston v. McGinnis, No. 97-CV-6862, 1999 WL 1129613, at *7 (E.D.N.Y. Oct. 13, 1999).

B. Sufficiency of the Evidence

As on direct appeal, petitioner asserts here that the evidence adduced at trial was insufficient to support a verdict of guilty beyond a reasonable doubt. Specifically petitioner alleges that the state failed to present credible evidence that he intended to have sexual intercourse with Ciuro.

Petitioner states:

> The evidence in this case— that appellant unzipped his trousers, unbuckled his belt, and reached toward Ciuro, who was face down on the floor in the train station stairwell with her pants and underwear pulled down—was legally insufficient to sustain the attempted rape conviction, because it depended on speculation [by] the jury to conclude that appellant intended to engage in sexual intercourse with her.

(App. Brief at 10). Petitioner further argues that his conduct was "indicative of some unspecified criminality, and not of an attempt to engage in sexual intercourse." Id. at 12. Finally, petitioner argues that since the jury acquitted him of the sexual abuse charges, the jury did not credit Ciuro's testimony. Petitioner's argument is without merit.

The Fourteenth Amendment's due process clause "prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." Einaugler v. Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364 (1970)). A petitioner challenging the sufficiency of the evidence in a habeas

---

[5] Even if this claim raised a proper federal claim it should still be denied. The trial court determined that there was no undisclosed statement from Rivera, nor any other undisclosed Rosario material. People v. Thurmond, Ind. No. 8090-99, slip op. at 1 (Sup. Ct. Kings County, May 21, 2001) (annexed as respondent's Exhibit G). Petitioner cannot demonstrate that this determination is contrary to or an unreasonable application of clearly established Federal law.

12

corpus proceeding "bears a very heavy burden." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 811 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979) (emphasis in original); Farrington v. Senkowski, 214 F.3d 237, 240 (2d Cir. 2000).

When considering the sufficiency of the evidence of a state court conviction, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). New York law provides, in relevant part, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law §§ 110.00, 130.35 (McKinney 1997). To constitute an attempt it must be established that the defendant acted with a specific intent, that is, that he intended to commit a specific crime and it must be proven that the defendant acted to carry out his intent. People v. Campbell, 72 N.Y.2d 602, 605 (1988); People v. Bracey, 41 N.Y.2d 296, 299 (1977).

Moreover, to find a defendant guilty of attempted rape, a jury may rely on evidence of defendant's conduct and the surrounding circumstances to conclude that defendant acted with intent to rape the victim. Cf. Bracey, 41 N.Y.2d at 301 (intent may be inferred from the act itself as well as the surrounding circumstances). Here, the evidence was such that the jury inferred the defendant's intent to rape from his conduct and the surrounding circumstances, and found that he acted to carry his objective forward. The testimony showed that petitioner pinned Ciuro's arms, touched her breast and ordered Ciuro to touch his penis. (T at 240-41). Testimony further established that petitioner ordered Ciuro to partially disrobe, and then punched her in her head which caused her to lose consciousness. (T at 240-44).

13

Respondent argues that the only reason that petitioner's sexual assault of Ciuro did not escalate to a more serious offense was because Rivera intervened and petitioner fled. "The act tending to effect the commission of the crime need not be the final one toward the completion of the offense, but it must carry the project forward within dangerous proximity to the commission of the crime." Bracey, 41 NY2d at 300; see also People v. Spagnualo, 5 A.D.3d 995, 774 N.Y.S.2d 223 4th Dept. 2004) (defendant's acts of touching victim's breasts and vaginal area and telling victim that he was going to have sex with her constituted attempted rape, regardless of defendant's contention that he never actually removed victim's underwear); People v. Kelly, 166 A.D.2d 195, 564 N.Y.S.2d 79 (1st Dept. 1990) (evidence that defendant stuck knife against victim's side, ordered her to keep walking, and attempted to force her into an abandoned car was sufficient to establish intent to commit rape); People v. Glover, 107 A.D.2d 821, 484 N.Y.S.2d 659 (2d Dept. 1985) (defendant's acts of accosting a victim, forcing her into her car and restraining her with verbal threats and threat of injury with a knife established the requisite intent to commit rape).

Petitioner further argues that the testimony of Ciuro and Rivera is suspect. Specifically, petitioner alleges that Ciuro made inconsistent statements to "medical personnel and Detective Ortez," and that Ciuro and Rivera's testimony as to how Ciuro was discovered were inconsistent with each other. Petition at 6, ¶ E.

However, this Court must assume that a jury resolved any factual conflicts "in favor of the prosecution." Jackson, 443 U.S. at 319. This includes conflicts relating to witness credibility. See United States v. Allah, 130 F.3d 33, 45 (2d Cir. 1997) (a reviewing court presented with a sufficiency challenge must view the evidence in the light most favorable to the government and defer to the jury in assessing witness credibility); Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994)

14

(determining witness credibility is the exclusive responsibility of the jury); United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989) ("the proper place for a challenge to a witness's credibility is 'in cross-examination and in subsequent argument to the jury, not in an appellate brief'" (quoting United States v. Friedman, 854 F.2d 535, 558 (2d Cir. 1988)). "Federal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review, [a federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution." Vera v. Hanslmaier, 928 F.Supp. 278, 284 (S.D.N.Y. 1996) (quoting Anderson v. Senkowski, No. 92-CV-1007, 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992); see also Huber v. Schriver, 140 F.Supp.2d 265, 277 (E.D.N.Y. 2001); Ortiz v. Artuz, 113 F.Supp.2d 327, 340 (E.D.N.Y. 2000).

The evidence adduced at trial, viewed in the light most favorable to the prosecution, clearly established petitioner's guilt beyond a reasonable doubt on each of the elements of the crimes for which he was convicted. Petitioner's challenge to the sufficiency of the evidence is without merit. The state court decision was not contrary to, nor was it an unreasonable application of Federal law. Accordingly, the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied.

## CONCLUSION

It is recommended that petitioner's application for a writ of habeas corpus should be denied. A certificate of appealability should not issue as petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253 (c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2d Cir. 2000); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). It is further recommended that the Court certify pursuant to 28 U.S.C. § 1915 (a)(3) that *in forma pauperis* is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636 (b) (1) and Rule 72 (b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the ten (10) days period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: June 29, 2005
Brooklyn, New York